NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SHIRELLE K. MONDY,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Civ. No. 18-12900<br><br>**OPINION** |

THOMPSON, U.S.D.J.

# **INTRODUCTION**

This matter comes before the Court to review, pursuant to 42 U.S.C. § 405(g), the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff Shirelle K. Mondy's application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, and for supplemental security income under Title XVI, 42 U.S.C. § 1382 *et seq.* Plaintiff Shirelle K. Mondy ("Plaintiff") seeks remand of the Commissioner's decision. (ECF No. 13.) The Commissioner seeks affirmance of the decision. (ECF No. 17.) The Court has decided this matter based on the written submissions of the parties and without oral argument pursuant to Local Civil Rule 9.1(f). For the following reasons, the decision of the Commissioner is affirmed.

# **BACKGROUND**

Plaintiff is now fifty-one years old and claims disability based on chronic obstructive

pulmonary disease ("COPD"),[1] congestive heart failure ("CHF"),[2] mitral valve regurgitation,[3] and back pain. (Admin. Record ("R.") at 267, ECF No. 9.)

In July 2013, Plaintiff was admitted to the hospital for shortness of breath and productive cough. (R. at 344.) A CT scan showed pleural effusion[4] with mediastinal adenopathy,[5] and she was diagnosed with possible underlying COPD. (*Id.*) Plaintiff was counseled to stop smoking and given nebulizer treatment and steroids. (*Id.*) Upon discharge, she had good bilateral air entry without abnormal lung sounds, and her heart was functioning normally. (*Id.*; *see also* R. at 20.)

In November 2013, Plaintiff was again admitted to the hospital. (R. at 363.) She was diagnosed with COPD and CHF, and tests showed severe mitral valve regurgitation and a small pleural effusion. (R. at 363, 436.) Plaintiff was again counseled to stop smoking, and mitral valve replacement surgery was recommended. (R. at 363.)

In January 2014, Plaintiff complained of mild chest and shoulder pain and was hospitalized once more. (R. at 419.) Other than chest pain, her lung and heart condition was

---

[1] "[COPD] is a chronic inflammatory lung disease that causes obstructed airflow from the lungs." *COPD*, Mayo Clinic (Aug. 11, 2017), https://www.mayoclinic.org/diseases-conditions/copd/symptoms-causes/syc-20353679.

[2] "[CHF] occurs when your heart muscle doesn't pump blood as well as it should." *Heart Failure*, Mayo Clinic (Dec. 23, 2017), https://www.mayoclinic.org/diseases-conditions/heart-failure/symptoms-causes/syc-20373142.

[3] "Mitral valve regurgitation . . . is a condition in which your heart's mitral valve doesn't close tightly, allowing blood to flow backward in your heart. If the mitral valve regurgitation is significant, blood can't move through your heart or to the rest of your body as efficiently, making you feel tired or out of breath." *Mitral Valve Regurgitation*, Mayo Clinic (May 17, 2019), https://www.mayoclinic.org/diseases-conditions/mitral-valve-regurgitation/symptoms-causes/syc-20350178.

[4] Pleural effusion is the build-up of fluid in the space between the tissue lining the inner side of the chest cavity and the tissue surrounding the lungs. *Pleurisy*, Mayo Clinic (Feb. 6, 2018), https://www.mayoclinic.org/diseases-conditions/pleurisy/symptoms-causes/syc-20351863. The condition can lead to difficulty breathing and coughing. *Id.*

[5] This refers to enlargement of lymph nodes found in the area of the chest that separates the lungs. *Mediastinal Tumor*, Cleveland Clinic (Apr. 9, 2019), https://my.clevelandclinic.org/health/diseases/13792-mediastinal-tumor.

normal. (*Id.*) As the Administrative Law Judge ("ALJ") summarized:

> Subsequent treatment notes show continue[d] complaints of shortness of breath and intermittent episodes of chest pain with exertion. In February 2014, respiratory findings were largely unremarkable apart from distant breath sounds. In April 2014, slightly diminished air movement was noted bilaterally.
>
> Respiratory and cardiac findings have remained largely unremarkable with little evidence of significant resulting physical deficits. [Plaintiff] frequently exhibited no muscle pain or neurologic weakness. On November 12, 2013, she denied generalized weakness.

(R. at 20 (internal citations omitted).)

In November 2014, Plaintiff was examined by Dr. Francky Merlin. (R. at 525–32.) Plaintiff was diagnosed with COPD and CHF; her heart function, lung function, walking, and grasp were normal; Dr. Merlin concluded that she could sit, stand, walk, crouch, hear, and speak. (R. at 526–27.)

In March 2015, Plaintiff received mitral valve replacement surgery. (R. at 739.) Six days after discharge, she was readmitted and found to have a large pericardial effusion.[6] (R. at 753.) A drain was put in place for a day, and Plaintiff's condition stabilized. (*Id.*)

In March 2017, Plaintiff was examined again by Dr. Merlin. (R. at 659–70.) As before, Plaintiff's lung function, walking, and grasp were normal. (R. at 660.) She exhibited a "Grade 2/6 murmur" but her heart function was otherwise normal. (*Id.*) Dr. Merlin concluded that Plaintiff could sit, stand, walk, crouch, hear, and speak. (*Id.*) Dr. Merlin then completed a functional evaluation, concluding that Plaintiff is limited to "a restricted range of sedentary exertion." (R. at 663–69; *see also* R. at 21 (summarizing the findings).)

In April 2017, Dr. Jeffrey Koretzky completed a functional evaluation of Plaintiff. (R. at

---

[6] "Pericardial effusion . . . is the accumulation of too much fluid in the double-layered, sac-like structure around the heart (pericardium)." *Pericardial effusion*, Mayo Clinic (Aug. 10, 2017), https://www.mayoclinic.org/diseases-conditions/pericardial-effusion/symptoms-causes/syc-20353720.

3

672–77.) He concluded that Plaintiff could sit for one hour and stand or walk for one hour in an eight-hour workday and that she could not stand, walk, and sit in any combination for a total of eight hours. (R. at 675–76.) Dr. Koretzky also indicated that Plaintiff must elevate her right leg when sitting and switch between sitting and standing every fifteen to twenty minutes. (R. at 675.)

> Plaintiff testified before the ALJ that
>
> her ability to work is limited by COPD, CHF, nitro valve leakage,[7] and back pain. She described variable daily activities due to fatigue, breathing difficulties, and leg cramps. She reported poor sleep due to breathing problems, back pain, and night sweats. She also indicated problems with dressing and bathing slowly. She allegedly cannot walk more than 20 feet before requiring rest She reported her ability to pay attention is dependent on her daily level of pain. [S]he testified that she continues to experience significant functional deficits caused by shortness of breath, fatigue, and chronic pain. She testified that she can only sit and stand/walk in one position for 15–20 minutes each. She indicated that she could slowly walk for 4–5 blocks.

(R. at 19 (internal citations omitted).)

Plaintiff protectively applied for benefits on April 24, 2014. (*See* R. at 15.) Her applications were denied initially and again upon reconsideration. (R. at 98, 108.) Plaintiff then requested a hearing, which was held on May 25, 2017 before an ALJ. (R. at 15; *see also* R. at 35–76 (hearing transcript).) In a decision issued on August 16, 2017, the ALJ denied Plaintiff's applications. (R. at 12–23.) On June 21, 2018, the Appeals Council denied Plaintiff's request for review. (R. at 1–3.) The ALJ's decision is therefore considered final action by the Commissioner. (*See* R. at 2.)

On August 17, 2018, Plaintiff appealed the Commissioner's decision to this Court by filing a Complaint. (ECF No. 1.) Plaintiff submitted a brief on February 18, 2019 (ECF No. 13), the Commissioner submitted a brief on April 16, 2019 (ECF No. 17), and Plaintiff filed a reply brief on April 29, 2019 (ECF No. 18). On May 16, 2019, this case was reassigned to the

---

[7] This presumably refers to Plaintiff's *mitral* valve leakage.

Honorable Anne E. Thompson. (ECF No. 19.) This matter is presently before the Court.

**LEGAL STANDARDS**

**I.      Disability Determination by the Commissioner**

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To show disability, a claimant must "furnish[] such medical and other evidence of the existence thereof as the Commissioner of Social Security may require." § 423(d)(5)(A).

The Commissioner employs a five-step sequential evaluation process for disability claims. *See generally* 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999). The threshold inquiry looks to (1) whether the claimant has engaged in any substantial gainful activity since her alleged disability onset date. § 404.1520(a)(4)(i). If not, the Commissioner considers (2) whether the claimant has any impairment or combination of impairments that is "severe," *i.e.*, that limits the claimant's "physical or mental ability to do basic work activities." §§ 404.1520(b)–(c), 404.1521. If the claimant has a severe impairment, the Commissioner then examines the objective medical evidence to determine (3) whether the impairment matches or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. §§ 404.1520(d), 404.1525, 404.1526. If so, the claimant is then eligible for benefits. § 404.1520(d). If not, the Commissioner assesses the claimant's residual functional capacity ("RFC"), which is the claimant's remaining ability to work given her impairments. § 404.1520(e). Comparing the RFC with the requirements of past relevant work, the Commissioner determines (4) whether the claimant has satisfied her burden of establishing that she is unable to

return to her past relevant work. §§ 404.1520(f), 404.1560(b); *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007). If the claimant meets this burden, the burden shifts to the Commissioner to show (5) whether other work exists in significant numbers in the national economy that the claimant could perform given her medical impairments, age, education, past work experience, and RFC. § 404.1520(g); *Poulos*, 474 F.3d at 92. If such work does not exist, the claimant is deemed disabled. § 404.1520(g)(1).

## II. District Court Standard of Review

Section 405(g) empowers district courts to "affirm[], modify[], or revers[e] the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." In reviewing the ALJ's decision, the court reviews questions of law de novo and questions of fact under a "substantial evidence" standard of review. § 405(g); *Poulos*, 474 F.3d at 91. "Substantial evidence is defined as 'more than a mere scintilla;' it means 'such relevant evidence as a reasonable mind might accept as adequate.'" *Thomas v. Comm'r of Soc. Sec. Admin.*, 625 F.3d 798, 800 (3d Cir. 2010) (quoting *Plummer*, 186 F.3d at 427). Where the Commissioner's factual findings are supported by substantial evidence in the record, they are considered conclusive even though the Court might have decided the inquiry differently. § 405(g); *Hagans v. Comm'r of Soc. Sec.*, 694 F.3d 287, 292 (3d Cir. 2012). However, the Commissioner must "analyze[] all evidence and . . . sufficiently explain[] the weight he has given to obviously probative exhibits." *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978) (internal quotations omitted); *accord Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 122 (3d Cir. 2000).

## DISCUSSION

### I. The ALJ's Decision and Asserted Errors

At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date. (R. at 18.) At Step Two, the ALJ found that Plaintiff's

severe impairments were COPD and CHF. (*Id.*) She found that Plaintiff's back and joint pain—described as "arthritic pain"—and hypertension were not severe. (*Id.*)

At Step Three, the ALJ found that none of these impairments equaled a listed impairment. (*Id.*) The ALJ then concluded that:

> [Plaintiff] has the [RFC] to perform light work . . . except she can frequently climb stairs and ramps but never climb ladders, ropes, or scaffolds. She requires a sit/stand option at will and without going off task. She can frequently handle, finger, and reach on both sides. She can frequently operate foot controls. She must avoid even moderate exposure to pulmonary irritants.

(R. at 18.) In reaching this determination, the ALJ summarized Plaintiff's medical history described above. (R. at 18–22.) The ALJ gave Dr. Merlin's first opinion "partial weight in limiting the claimant to a restricted range of light work" given that "his findings indicating largely intact physical function with only minimal objective abnormalities are consistent with the longitudinal treatment record and supported by objective medical findings." (R. at 20.) Dr. Merlin's second opinion—which found that Plaintiff was limited to sedentary levels of activity—was "granted limited evidentiary weight." (R. at 21.) The ALJ noted that Dr. Merlin's physical examination "was again largely benign with no indication of what specific impairments and functional limitations would support limiting [Plaintiff] to sedentary work" and concluded that Dr. Merlin's recommended limitations were based on Plaintiff's subjective reports rather than "the frequently unremarkable medical record." (*Id.*) The ALJ found "no support" for the limits suggested for standing and walking. (*Id.*)

As to Dr. Koretzky's indications that Plaintiff was extremely limited in sitting, standing, or walking in an eight-hour work day, the ALJ stated that "[t]hese sweeping findings are largely inconsistent with the frequently benign medical findings found at various points in the treatment record." (*Id.*) The ALJ further explained:

7

>[Plaintiff] exhibits full motor strength with no evidence of such severe lifting restrictions. There is no clear reason why [Plaintiff's] sitting abilities would be limited to less than two hours, even assuming that her reports are reliable. Dr. Koretzky's findings appear almost entirely based on [Plaintiff's] subjective report. For the reasons discussed above, her subjective statements are frequently unsupported by objective abnormalities. She is affected by no more than mild to moderate breathing limitations, fatigue, and occasional episodes of chest pain.

(R. at 21–22.)

Although the ALJ gave little weight to the opinions of Dr. Merlin and Dr. Koretzky, she gave "great evidentiary weight" to the opinions of state agency non-examining medical physicians, explaining that "although these opinions are from non-examining and non-treating expert sources, they are generally consistent with the medical evidence as a whole." (R. at 22.)

The ALJ found that Plaintiff's self-described symptoms could have been produced by medically determinable impairments, but that "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. at 19.) The ALJ thus gave weight to Plaintiff's subjective statements "only to the extent they can reasonably be accepted as consistent with the objective medical and other evidence." (*Id.*)

At Step Four, the ALJ determined that Plaintiff could perform her past relevant work as a cashier. (*Id.*) Therefore, Plaintiff was determined not to be disabled. (*Id.*)

Plaintiff claims that the ALJ (1) improperly discounted the opinions of Dr. Merlin and Dr. Koretzky and gave undue weight to the opinions of the state agency physicians, (2) improperly discounted Plaintiff's testimony, and (3) failed to discuss Plaintiff's fibromyalgia. (Pl.'s Br. at 19–34.) Each objection is discussed below.

## II. The ALJ Properly Weighed Medical Opinions

The ALJ is required to explain the weight she gives to physicians' testimony. *Gober*, 574 F.2d at 776; *Burnett*, 220 F.3d at 122. In this case, the ALJ gave "partial weight" to Dr. Merlin's

first opinion and "limited" weight to his second, citing Plaintiff's "largely intact physical function with only minimal objective abnormalities" and "largely benign" physical examination results. (R. at 20–21.) The "benign" results cited by the ALJ refer to Dr. Merlin's findings that Plaintiff had normal lung function and walked and grasped normally. (*See* R. at 526–27, 660.) Thus, the ALJ weighed Dr. Merlin's opinion in light of the physical examination results from Dr. Merlin's own evaluation, as well as the evaluations of other physicians. (*See, e.g.*, R. at 20 (discussing "largely unremarkable" respiratory and cardiac functions).)

And notably, parts of Dr. Merlin's opinions were accepted by the ALJ. The ALJ included in the RFC that Plaintiff "must avoid even moderate exposure to pulmonary irritants," in response to the medical evidence of Plaintiff's heart problems. (R. at 18.) And the portion of the RFC stating that Plaintiff "can frequently climb stairs and ramps" and "requires a sit/stand option at will" (*id.*) is consistent with Dr. Merlin's conclusion that Plaintiff can sit, stand, walk, and crouch (R. at 527.)

The opinion of a treating physician is entitled to great weight "especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 355 (3d Cir. 2008) (quoting *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)). Outright rejection of such an opinion is warranted only when contradictory medical evidence exists, *id.*; in this respect, the ALJ's "own credibility judgments, speculation or lay opinion" cannot substitute for medical evidence, *Morales*, 225 F.3d at 317–18 (internal citations omitted). A treating physician's opinion, however, "may be afforded 'more or less weight depending upon the extent to which supporting explanations are provided.'" *Brownawell*, 554 F.3d at 355 (quoting *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)).

9

Dr. Koretzky was a treating physician (R. at 678–780), but the ALJ accorded little weight to his opinion that Plaintiff could not sit or stand/walk for more than one hour at a time because such a conclusion was "largely inconsistent with the frequently benign medical findings [throughout] the treatment record." (R. at 21). The ALJ noted that Plaintiff "exhibits full motor strength with no evidence of such severe lifting restrictions" and "is affected by no more than mild to moderate breathing limitations, fatigue, and occasional episodes of chest pains." (R. at 21–22.) The ALJ acknowledged that Plaintiff's subjective complaints support Dr. Koretzky's conclusions, but found that these complaints were "frequently unsupported by objective abnormalities" in Plaintiff's condition. (R. at 22.) The ALJ therefore described substantial evidence to justify discounting Dr. Koretzky's opinion.

Plaintiff argues that the ALJ failed to consider the factors found in regulations for weighing medical opinions. 20 C.F.R. §§ 404.1527(c) and 416.927(c) provide factors that must be considered for any medical opinion not given controlling weight: the examining relationship, the treatment relationship, supportability, consistency, specialization, and "any factors" brought to the Commissioner's attention. In evaluating the opinions of Dr. Merlin and Dr. Koretzky, the ALJ explicitly considered the examining relationship (*see, e.g.*, R. at 21 (describing a "consultative examination")), supportability (*see, e.g.*, R. at 22 (finding Dr. Koretzky's medical opinion to be "unsupported by objective findings")), and consistency (*id.* (discussing "inconsisten[cy] with the longitudinal treatment record as a whole")). While the ALJ does not appear to have discussed the treatment relationship, that fact does not warrant remand; the ALJ clearly discussed the opinions of Dr. Merlin and Dr. Koretzky and provided reasons, based on medical evidence in the record, for discounting those opinions.

Finally, the ALJ did not err in giving "great evidentiary weight" to the opinions of state

10

agency non-examining medical physicians. (R. at 22.) The ALJ acknowledged that "these opinions are from non-examining and non-treating expert sources," but found them credible because they "are generally consistent with the medical evidence as a whole." (*Id.*) The ALJ thus had substantial evidence to support the significant weight given to these opinions.

## III. The ALJ Properly Considered Plaintiff's Testimony

"An ALJ must give serious consideration to a claimant's subjective complaints of pain, even where those complaints are not supported by objective evidence." *Mason v. Shalala*, 994 F.2d 1058, 1067–68 (3d Cir. 1993) (citing *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985)). Where those subjective complaints are supported by medical evidence, they should be given "great weight." *Id.* (citing *Carter v. Railroad Retirement Bd.*, 834 F.2d 62, 65 (3d Cir. 1987); *Ferguson*, 765 F.2d at 37); *accord Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 433 (3d Cir. 1999).

In this case, the ALJ partially discounted Plaintiff's testimony as to her symptoms and limitations because it was "not entirely consistent with the medical evidence and other evidence in the record." (R. at 19.) In other portions of her opinion, the ALJ detailed medical findings that Plaintiff exhibits full motor strength; shows no evidence of severe lifting restrictions; has no more than mild to moderate breathing limitations, fatigue, and chest pain; and has normal lung function. (R. at 21–22.) The ALJ therefore relied on substantial evidence in determining that Plaintiff's subjective complaints were entitled to less weight.

## IV. The ALJ's Failure to Discuss Fibromyalgia at Step Two Was Harmless

The record contains several documents in which Dr. Qaisar Usmani noted "[m]ultiple fibromyalgia tender points" and diagnosed "[f]ibromyalgia syndrome."[8] (R. at 807, 809–11.)

---

[8] "Fibromyalgia is a disorder characterized by widespread musculoskeletal pain accompanied by

11

Two of these documents were addressed to Dr. Koretzky. (R. at 807, 809.) Yet the ALJ did not discuss fibromyalgia at all in her decision. (R. at 15–23.)

"An ALJ is required to consider impairments a claimant says he has, or about which the ALJ receives evidence." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (quoting *Sharbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) (per curiam)). An ALJ must also "give some indication of the evidence which he rejects and his reason(s) for discounting such evidence." *Burnett*, 220 F.3d at 121. That being said, an ALJ's failure to discuss a claimant's condition is harmless error in some circumstances. In *Rutherford v. Barnhart*, the Third Circuit refused to remand an ALJ's decision that failed to discuss the claimant's obesity. 399 F.3d at 552–53. That conclusion was based on the fact that (1) the claimant did not specify how obesity would affect the five-step analysis other than the "generalized" "assertion that her weight makes it more difficult for her to stand, walk and manipulate her hands and fingers," and (2) the ALJ relied on the conclusions of doctors who were aware of the claimant's obesity, so the ALJ therefore "indirect[ly]" considered obesity. *Id.* at 553. Additionally, in a nonprecedential Third Circuit case, the court summarily concluded that, if a claimant succeeds at Step Two, any failure to deem impairments to be severe at Step Two is harmless. *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007).

In the present case, any error by the ALJ in failing to discuss Plaintiff's fibromyalgia at Step Two was harmless. Dr. Koretzky would have known about Plaintiff's fibromyalgia—based on Dr. Usmani's correspondence—before examining her, and Plaintiff succeeded at Step Two

---

fatigue, sleep, memory and mood issues. Researchers believe that fibromyalgia amplifies painful sensations by affecting the way your brain processes pain signals." *Fibromyalgia*, Mayo Clinic (Aug. 11, 2017), https://www.mayoclinic.org/diseases-conditions/fibromyalgia/symptoms-causes/syc-20354780.

even without recognition of her fibromyalgia. It is also notable that Plaintiff did not discuss fibromyalgia in her testimony before the ALJ (R. at 35–76), nor did she raise the issue in the Statement of Primary Contentions filed in this case (ECF No. 11). In these circumstances, and given the Third Circuit law discussed, any error in failing to consider Plaintiff's fibromyalgia was harmless.

## **CONCLUSION**

For the foregoing reasons, the decision of the Commissioner is affirmed. An appropriate Order will follow.

Date:  8/14/19                                                                  */s/ Anne E. Thompson*
                                                                                           ANNE E. THOMPSON, U.S.D.J.